UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LUIS NIEVES,

                                        Plaintiff,

        v.                                                      9:07-CV-655
                                                                (DHN/GJD)
D. ALDRICH, *et al*.,

                                        Defendants.

_____

LUIS NIEVES, Plaintiff *pro se*
HEATHER R. RUBINSTEIN, Ass't Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636

(b) and Local Rules N.D.N.Y. 72.3(c).

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., and the

Rehabilitation Act (RA), 29 U.S.C. § 794, alleging that defendants violated his

constitutional rights and discriminated against him based upon his disability. Compl.

¶¶ 49-57. (Dkt. No. 1).  Plaintiff seeks declaratory, injunctive,[1] and substantial

monetary relief. Compl. ¶¶ A-E.

---

[1] The court notes that plaintiff has been released from custody, thus, any claims for
injunctive relief may be dismissed as moot. *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (a
case is moot when the problem sought to be remedied has ceased, and where there is no
reasonable expectation that the wrong will be repeated).  Since plaintiff in this case has been
released, there is nothing left for defendants to do if plaintiff were to succeed.

Presently before the court is defendants' motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). (Dkt. No. 33).  Plaintiff has not responded to the motion.  For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

### 1.     Judgment on the Pleadings

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See* Fed. R. Civ. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6). *Id.*

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Plaintiff's factual allegations must be

sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests.""*Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)).  When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) *per curiam*).

## 2.    Facts and Contentions

Plaintiff claims that due to some extensive nasal surgery in 1999, his nose emits a strong odor. Compl. ¶ 12.  Plaintiff alleges that in September of 2006 he was assigned to Adult Basic Education (ABE), taught by defendant Aldrich. Compl. ¶ 13. Plaintiff claims that from September 2006 until November 19, 2006, he was ridiculed and embarrassed by his classmates and the instructor because of plaintiff's condition. Compl. ¶ 15.  Plaintiff alleges that on November 19, 2006, defendant Aldrich told plaintiff to leave the class. Compl. ¶ 16.  Plaintiff claims that because of "the unprofessional and improper" way that plaintiff was removed from the class by defendant Aldrich, plaintiff "was discriminated against because of his disability." Compl. ¶ 17.

Plaintiff states that defendant Aldrich completed an "Inmate Counseling Notification Form" and submitted the form to defendant T. Fauss, the Educational Supervisor. Compl. ¶ 18.  Plaintiff claims that defendants Aldrich and Fauss

3

discriminated against plaintiff based on his disability, "with deliberate indifference to

plaintiffs [sic] need for an educational program" by taking steps to remove plaintiff

from the classroom setting altogether. Compl. ¶ 20.

On November 20, 2006, when plaintiff attempted to go to defendant Aldrich's

class, he was told to report to defendant Fauss's office. Compl. ¶¶ 20-21.  Defendant

Fauss discussed the "Inmate Counseling Notification Form" with plaintiff, but refused

to show it to him. Compl.  ¶¶ 22-23.  Plaintiff attempted to explain that the problem

was the result of his 1999 surgery. Compl. ¶ 24.  Plaintiff claims that he was

"threatened" with misbehavior reports based upon "unhygienic acts" and "creating a

disturbance" if he did not discuss his medical[2] problems with defendant Fauss so that

he could check with the medical department. Compl. ¶ 26.

Plaintiff states that on November 20, 2006, defendant Aldrich submitted a

"Request for Waiver from the Mandatory Education Policy" for plaintiff, based on the

fact that plaintiff gave off an offensive odor and other students were complaining.

Compl. ¶ 27.  On November 27, 2006, defendant Fauss approved the request for

waiver from the Mandatory Education Policy, and on November 29, 2006, defendant

Deputy Superintendent J. Nichols also approved the waiver. Compl. ¶¶ 28-30.

Plaintiff states that one of these defendants made a notation on the form, that "[b]ased

on [plaintiff's] medical condition, place in cell study." Compl. ¶ 31.

Plaintiff states that on November 30, 2006, he filed a grievance, alleging that

---

[2] The complaint states that plaintiff was threatened if he did not disclose his "medication" problems with defendant Fauss, however, based on the rest of the complaint, it is probable that plaintiff means "medical" problems.

the proper procedures were not followed for removing him from his educational program. Compl. ¶ 32.  Plaintiff states that "as a result" of the grievance hearing, he filed a Freedom of Information Law (FOIL) request for the Inmate Counseling Notification Form and the Request for Waiver from the Mandatory Education Policy, but his request was denied. Compl. ¶¶ 33-34.  The denial of plaintiff's grievance was affirmed by the Superintendent, defendant Pearlman and by the Central Office Review Committee (CORC). Compl. ¶¶ 35-37.

Plaintiff also claims that he filed a request for "Reasonable Accommodations for Inmates with Disabilities" pursuant to Department of Correctional Services (DOCS) Directive 2614 in which he requested "Minimum Security facility-Outside Clearance programs" because he had been waiting several months for a transfer. Compl. ¶ 38.  On March 15, 2007, defendant Nichols informed plaintiff that he would be assigned to cell-study and assigned to the "Grounds crew," and that he was not expected to attend classroom study. Compl. ¶ 40.  Plaintiff's request for transfer was denied because of "poor custody adjustment." *Id.*

Plaintiff filed another grievance on March 15, 2007, challenging the denial of a "reasonable accommodation" and the denial of his transfer request. Compl. ¶ 42. Plaintiff states that on April 6, 2007, his grievance was accepted "to the extent that plaintiff was receiving reasonable accommodation by having independent study instead of classroom." Compl. ¶ 43.  All transfer requests were to be addressed to plaintiff's counselor. *Id.*  Superintendent Pearlman denied plaintiff's appeal, and the CORC upheld the Superintendent's findings. Compl. ¶ 44-45.

Plaintiff makes the following claims:

(1)     Defendants Aldrich and Fauss violated the ADA as well as Due Process, Equal Protection, and the Eighth Amendment prohibition against cruel and unusual punishment. Compl. ¶¶ 49-50.

(2)     Defendant Nichols violated plaintiff's rights to due process and equal protection rights when he failed to conduct a proper investigation into plaintiff's request for "reasonable accommodation." Compl. ¶ 51.

(3)     Defendants Aldrich, Fauss, and Nichols violated New York State Public Health Law § 2780 when they disclosed plaintiff's private medical information. Compl. ¶ 52.

(4)     Defendant Pearlman violated plaintiff's right to due process and equal protection when he failed to adequately investigate plaintiff's grievance appeals. Compl. ¶ 53.

(5)     Defendant Raymond violated plaintiff's rights to due process and equal protection when he failed to properly investigate plaintiff's removal from the educational program and failed to ensure that DOCS was properly following the ADA.  Plaintiff also claims that defendant Raymond's conduct constituted "deliberate indifference to plaintiff[']s educational needs." Compl. ¶ 54.

(6)     Defendant Corrections Counselor Picente denied plaintiff due process when he changed plaintiff's program without adequate notice and based on his disability. Compl. ¶ 55.

(7)     Defendant Eagan violated plaintiff's right to due process when he failed to obtain all the facts and failed to make an "independent determination" prior to affirming the denial of plaintiff's grievance appeal.

(8)     Defendant DOCS violated plaintiff's right to due process, his right to be free from cruel and unusual punishment; and violated the ADA and the Rehabilitation Act.

3.      **Eleventh Amendment**

A.  **Section 1983**

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.  An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991)(citations omitted).  Immunity from suit under the Eleventh Amendment extends to State agencies and departments. *Burnette v. Carothers*, 193 F.3d 52, 57 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000).

To the extent that plaintiff in this action is suing the defendants under section *1983* for alleged constitutional violations, plaintiff cannot name the defendants in their official capacities, nor can he sue DOCS itself.  Plaintiff may, however, sue the defendants in their "individual capacities" for constitutional violations under section 1983.

B.  **Statutory Relief**

The State of New York is a "public entity" within the meaning of the ADA. 42 U.S.C. § 12131(1)(A).  As stated above, naming a state defendant in his or her "official capacity" is tantamount to naming the State. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004).  In *Henrietta D.*, the Second Circuit held that a valid ADA claim may be stated against a state official in his

or her official capacity. *Id.* at 288-89.  The ADA does ***not***, however, provide for

"individual capacity" suits against state officials. *Garcia v. S.U.N.Y. Health Science*

*Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Thus, any suit for statutory

relief would be against the defendants in their "official" capacities.  Because plaintiff

in this case has been released from custody, there is no injunctive relief that the

defendants would be able to provide, and thus, to the extent that injunctive relief

would have been available, plaintiff's case is moot.

Although plaintiff's claim for damages could have proceeded, it is questionable

whether the damages may survive against the State.  While it is clear that the State is

not ***immune*** under the Eleventh Amendment from an action in Federal or State court

for a violation of the ADA,[3] courts have been attempting to determine the extent to

which that sovereign immunity has been abrogated by the ADA. *Bd. of Trustees of the*

*Univ. of Atlanta v. Garrett*, 531 U.S. 356,  360-74 (2001)(Title I); *Garcia*, 280 F.3d at

109-112. In *Garcia*, the Second Circuit stated that plaintiffs must show that the Title II

violation was "motivated by discriminatory animus or ill will due to disability." 280

F.3d at 112.

In *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court held that

Congress had the power to enforce the constitutional right of access to courts.  Lower

---

[3] A state may not claim sovereign immunity if it has specifically waived that immunity or
if Congress has abrogated that immunity pursuant to its power under Section 5 of the Fourteenth
Amendment. *Bd. of Trustees of the Univ. of Atlanta v. Garrett*, 531 U.S. 356, 363-64 (2001).
Title II of the ADA contains a section specifically stating that a State shall not be immune under
the Eleventh Amendment from an action in Federal or State court for a violation of the ADA. 42
U.S.C. § 12202.

courts have interpreted *Tennessee v. Lane,* holding that a private suit for money damages under Title II of the ADA may ***only*** be maintained against the state if the Title II violation involved a "fundamental right" such as access to courts. *See Castells v. Fisher*, 05 CV 4866, 2007 U.S. Dist. LEXIS 30188, * 12-13 (E.D.N.Y. March 24, 2007)(citing cases).  The court in *Castells* also interpreted language in *United States v. Georgia* in making the determination that a plaintiff must demonstrate that his fundamental rights were violated because of his disability in order to prevail in a private suit against the state entity under Title II of the ADA. 2007 U.S. Dist. LEXIS 30188 at *13 (citing *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

In this case, the court does not have to reach the issue of whether any claim for damages survives sovereign immunity analysis because this court finds that plaintiff has not stated a claim under either the ADA or RA.

**4.** **ADA and Rehabilitation Act**

The ADA and section 504 of the Rehabilitation Act are applicable to inmates in state correctional facilities. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).  In order to state a claim under section 504 of the Rehabilitation Act, the plaintiff must show that he (1) has a disability for purposes of the Act; (2) that he was "otherwise qualified" for a benefit that he was denied; (3) that he was denied the benefit solely because of his disability; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc*. 246 F.R.D. 432, 440 (S.D.N.Y. 2007).

Under the ADA, the inmate must establish that he (1) is a qualified individual

with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his or her disability; and (3) the entity providing the service is a public entity. *Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005).  The standards for determining whether plaintiff states a claim under the ADA and the RA are almost identical.  The only difference in the statutes is that the RA applies to entities receiving federal financial assistance, and Title II of the ADA applies to all public entities. *Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008).

In this case, plaintiff alleges that he had surgery on his nose in ***1999***, and that as a result of that surgery, he emitted a "strong odor" in ***2006***, such that he was removed from his educational program due to complaints from the instructor and other classmates about the odor.  In order to establish a claim under either the ADA or RA, the plaintiff must first show that he has a ***disability***. *Farid v. Bouey*, 554 F. Supp. 2d 301, 326 (N.D.N.Y. 2008).  Under the Title II of the ADA and section 504 of the RA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing *inter alia Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *Doe v. Goord*, No. 04-CV-570, 2004 U.S. Dist. LEXIS 24808, *62 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)).  Plaintiff must identify the activity that he claims is impaired and establish that it constitutes a "major life activity." *Weixel*, 287 F.3d at 147.

Major life activities include, among others, caring for oneself; performing

manual tasks; seeing, hearing; speaking; breathing; learning; reading; communicating; and working. 42 U.S.C. § 12101(2)(A).  Major life activities also include the operation of a major bodily function such as the immune system; digestive system; neurological system; respiratory; bladder; brain; endocrine; reproductive and circulatory systems. *Id.* § 12101(2)(B).  Plaintiff in this case has not specifically identified a disability, nor has he identified a "major life activity" that he claims has been "substantially limited." A substantial limitation is one that prevents or severely restricts the individual from doing activities that are of "central importance most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).[4]  The court assumes that plaintiff is basing his claim of "disability" on the "strong odor" that he emits, allegedly as a result of his 1999 nasal surgery.

However, plaintiff does not claim that his nasal surgery disfigured him in any way or that the nasal surgery caused plaintiff to be unable to perform any functions of daily living.  Plaintiff does not claim that his odor substantially limits ***his ability*** to perform any major life activities.  Plaintiff only claims that the odor was affecting other individuals in the classroom.  Thus, plaintiff is unable to show that he has a disability for purposes of either the ADA or the RA.

Even if plaintiff had been able to show that he had a disability, he cannot show that he was denied a benefit based on his disability.  Plaintiff was denied the

---

[4] The court notes that amendments to the ADA, taking effect January 1, 2009 broadened the scope of the definition of disability, partially superceding *Toyota Mfg. See Guary v. Upstate Nat'l Bank*, 618 F. Supp. 2d 272, 275 n.1 (W.D.N.Y. 2009)(citing ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008)).  However, it has been held that these amendments do not apply retroactively, thus, they do not affect this Court's recommendation.

opportunity to participate in a classroom environment based upon his odor, however, plaintiff was allowed "cell study."  Although plaintiff states that this option was not a "reasonable accommodation," this court cannot agree.  Plaintiff was afforded his educational program, albeit not in the way plaintiff preferred.  The fact that plaintiff did not like the accommodation does not make it "unreasonable."

**5.     Due Process**

Plaintiff alleges that he was removed from his classroom setting without due process, and he claims that defendants Nichols, Pearlman, Raymond, and Eagan failed to properly investigate plaintiff's grievances.

**A.  Educational Programs**

The law is well-settled that there is *no* property or liberty interest in a particular educational program in prison. *Toney v. Goord*, 2006 U.S. Dist. LEXIS 60987, *3-7 (S.D.N.Y. Aug. 28, 2006).  The plaintiff in *Toney* argued that inmates were entitled to a particularized educational program, tailored to meet their own individual needs. *Id.* at *4.  In analyzing plaintiff's claim, the *Toney* court cited various other cases in which courts in the Second Circuit, including the Second Circuit itself, have decided that N.Y. CORRECT. LAW § 136 does not confer a property *or* liberty interest in an educational or any other type of program. *Id.* at *5 (citing *inter alia Handberry v. Thompson*, 446 F.3d 335 (2d Cir. 2006); *Wright v. Coughlin*, 31 F. Supp. 2d 301, 311 (W.D.N.Y. 1998); *Giano v. Cuomo*, 94-CV-809, 1998 U.S. Dist. LEXIS 17215, *10 (N.D.N.Y. Oct. 28, 1998); *Lane v. Reid*, 575 F. Supp. 37, 39 (S.D.N.Y. 1983)).

Because plaintiff has no due process right to any particular educational

program, the defendants were not required to give plaintiff a formal hearing prior to his removal from the classroom setting.  Plaintiff claims that defendant Aldrich submitted an Inmate Counseling Notification, and that plaintiff was called into defendant Fauss's office to discuss the issue.  Plaintiff was well-aware of the reason for the termination of his classroom participation and had the opportunity to discuss it with defendant Fauss.  No more was required.  Thus, any due process claims or any claims of  "deliberate indifference" to plaintiff's "educational program" may be dismissed.

### B.  Grievance Procedures

The law is also clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003).  A violation of the inmate grievance procedures does *not* give rise to a claim under section 1983. *Cancel v. Goord*, No. 00-Civ. 2042, 2001 U.S. Dist. LEXIS 3440 (S.D.N.Y. Mar. 29, 2001). A claim that defendants improperly or inadequately investigated plaintiff's grievance is not actionable.  Thus, plaintiff's claims that defendants Nichols, Pearlman, Raymond, and Eagan failed to properly investigate plaintiff's grievances may be dismissed.

### 6.    Cruel and Unusual Punishment

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. CONST. amend. 8.  Cruel and unusual punishment takes the form of "unnecessary and wanton infliction of pain" by prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297

(1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In order to prevail on an Eighth Amendment claim, the plaintiff must prove both objectively, that the deprivation was "sufficiently serious," and subjectively, that defendants acted with "deliberate indifference" to the inmate's health or safety. *Phelps v. Capnolas*, 308 F.3d 180, 185 (2d Cir. 2002)(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The objective element involves an analysis of whether a plaintiff is being denied "the minimal measure of life's necessities," including medical care, food, clothing, and shelter. *Phelps*, 308 F.3d at 185 (quotation omitted).  The subjective element focuses upon the official's state of mind and is only met if the official knows of and disregards an excessive risk to the inmate's health or safety. *Id.* at 185-86.  This state of mind has been referred to as "deliberate indifference" and has been likened to the standard of "recklessness" as used in criminal law. *Id.* at 186.

Plaintiff in this case uses the term "deliberate indifference" to his "educational needs," however, as important or beneficial to an inmate as classroom participation might be, it is simply not one of "life's necessities" for purposes of the Eighth Amendment.  It cannot be seriously argued that the denial of classroom participation constituted "cruel and unusual punishment."  It must also be emphasized that plaintiff

was ***not*** denied an education,[5] he was denied the opportunity to participate in classroom study.  He was allowed cell study.  Thus, any claims based upon the Eighth Amendment may be dismissed.

**7.     Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)(citation omitted).  Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric*., 128 S. Ct. 2146, 2152 (2008).  However, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination and instead claims that he has been irrationally singled out as a "class of one." *Id.* (internal quotations omitted).

To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals. *Wiggins v. N.Y. City Dep't of Corr*., 06 Civ. 1946, 2008 U.S. Dist. LEXIS 61262, *21 (S.D.N.Y. Aug. 12, 2008)(citing *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006)).  Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*  In a "class-of-one"

---

[5] Even if plaintiff had been denied an education, the denial would not have risen to the level of an Eighth Amendment violation.

claim, the Equal Protection clause requires a "rational basis for the difference in treatment." *Id.* (citing *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The court notes that plaintiff appears to make an "equal protection" argument separate from his ADA and RA claims.  To the extent that plaintiff argues that he was treated "differently," plaintiff's equal protection claim cannot succeed.  Plaintiff has mentioned no other individual who is similarly situated to plaintiff who was allowed to stay in the classroom setting.  In any event, this court finds that plaintiff's exclusion from the classroom was reasonable and rational based upon the claim that plaintiff's odor was disturbing not only the instructor, but the other class members as well. Thus, plaintiff's equal protection claims may be dismissed.[6]

## 8.     New York Public Health Law § 2780 *et seq.*

Plaintiff alleges that defendants Aldrich, Fauss, and Nichols somehow violated N.Y. PUB. HEALTH LAW § 2780 *et seq.* by "disclosing" plaintiff's private health information. Compl. ¶ 52.  The court would first point out that Article 27 of the Public Health Law deals with "HIV and AIDS Related Information." *Id.*  Nowhere in plaintiff's complaint does he mention HIV or AIDS-related information.  Plaintiff states only that he was "threatened" with a misbehavior report if he did not reveal his "medication" problems to defendant Fauss so that the defendant could "check with the medical department" about plaintiff's odor problem.  Thus, any claim under this

---

[6] The court notes that plaintiff sprinkles the words "equal protection" liberally throughout his complaint, including within the paragraphs complaining about the grievance procedure.  As stated above, plaintiff's complaints about the grievance procedure do not state a constitutional claim, and he has not claimed that any other inmate's grievances were treated differently that his.

article of the Public Health Law may be dismissed.[7]

In any event, there is no indication in plaintiff's statement of facts that there was any disclosure of medical information.  Plaintiff claims he was threatened with misbehavior if he did not allow defendant Fauss to check with the medical department about his plaintiff's medical condition.  Plaintiff seems to forget that he was complaining about being excluded from his classroom study.  It was not unreasonable for defendant Fauss to ask to check with the medical department regarding plaintiff's claims.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for judgment on the pleadings (Dkt. No. 33) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health*

---

[7] Plaintiff does not make a constitutional privacy claim, however, the court notes that although prison inmates retain a right to privacy, the right is not absolute, and prison officials may impinge upon that right if it is "reasonably related to legitimate penological interests." *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999)(citations omitted).  In this case, to the extent that any of plaintiff's medical information was disclosed, it was disclosed in order to determine what plaintiff's problem might be in relation to his ability to be placed in a classroom setting.  Plaintiff states that he raised the issue in his grievance.  Plaintiff cannot complain that the defendants did not properly investigate his complaint and then argue that they required him to disclose medical information regarding the very condition of which he was complaining.

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: August 28, 2009

Hon. Gustave J. DiBianco
U.S. Magistrate Judge